IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

TYLER ANTHONY THOLEN,               :
                                    :
        Plaintiff,                  :
                                    :
v.                                  :        CASE NO.: 1:25-CV-114 (LAG)
                                    :
REGGIE RACHALS, *et al.*,           :
                                    :
        Defendants.                 :
                                    :
_____     :

## **ORDER**

Before the Court is Defendants' partial Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (Doc. 8).[1] For the reasons stated below, Defendants' partial Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (Doc. 8) is **GRANTED**.[2]

## **PROCEDURAL BACKGROUND**

On August 5, 2025, Plaintiff Tyler Anthony Tholen initiated this action against Defendants Sheriff Reggie Rachals (Defendant Rachals), Deputy Joseph Clark (Defendant Clark), Deputy Gina Barrett (Defendant Barrett), and former deputy Hezekiah Betancourt (Defendant Betancourt), all in their official and individual capacities, and the Association of County Commissioners of Georgia-Interlocal Risk Management Agency (Defendant ACCG-IRMA), as surety for Defendant Rachals. (Doc. 1). On August 25, 2025, Defendants filed a Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim.

---

[1]     Defendants do not seek to dismiss the 42 U.S.C. § 1983 or O.C.G.A. § 51-1-14 claims against Defendant Betancourt in his individual capacity. (*See generally* Docs. 8, 8-1).

[2]     Plaintiff amended the original Complaint after Defendants filed a Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (Doc. 4). "An amended complaint . . . moots '[a] motion to dismiss the original complaint because the motion seeks to dismiss a pleading that has been superseded." *See Whitfield v. Selene Fin. LP*, No. 5:24-CV-00153-TES, 2024 WL 4113534, at *1 (M.D. Ga. Sept. 6, 2024) (quoting *Wimberly v. Broome*, No. 6:15-cv-23, 2016 WL 3264346, at *1 (S.D. Ga. Mar. 29, 2016)). Accordingly, Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (Doc. 4) is **DENIED as moot**.

(Doc. 4). Plaintiff then filed an Amended Complaint (Doc. 5) on September 8, 2025, and a Response (Doc. 6) opposing the Motion. Plaintiff's Amended Complaint asserts individual- and official-capacity claims against Defendants Barrett, Betancourt, Clark, and Rachals (the Individual Defendants) pursuant to 42 U.S.C. § 1983 for alleged Fourteenth Amendment violations. (Doc. 5 ¶ 67). Plaintiff also asserts individual- and official-capacity claims against Defendant Betancourt pursuant to O.C.G.A. § 51-1-14. (*Id.* ¶¶ 64–66). It appears that Plaintiff also seeks to assert claims against Defendant ACCG-IRMA in its capacity as surety for Defendant Rachals pursuant to O.C.G.A. § 15-16-5 and the other Individual Defendants pursuant to O.C.G.A. § 45-4-26. (*Id.* ¶¶ 13–15). On September 22, 2025, Plaintiff filed a partial Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (Doc. 8) (Motion) as to "(1) all of the claims asserted against [Defendants] Barrett, Clark, and Rachals; (2) the claim asserted against [Defendant] ACCG-IRMA; and (3) the official capacity claims Plaintiff is asserting against [Defendant] Betancourt" in the Amended Complaint (Doc. 5). (Doc. 8 at 1). Plaintiff responded on October 13, 2025, and Defendants replied on October 17, 2025. (Docs. 10, 17). The Motion is now ripe for review. *See* M.D. Ga. L.R. 7.3.1(a).

## FACTUAL BACKGROUND

This suit arises from the alleged sexual abuse and harassment of Plaintiff by Defendant Betancourt while he was employed by the Lee County Sheriff's Office.[3] (Doc. 5 ¶¶ 19–20). On August 31, 2023, at approximately 2:25 p.m., inmates at the Lee County Jail (Jail) were escorted through a hallway leading to the Jail's recreational yard. (*Id.* ¶¶ 17–19). While in the hallway en route to the yard, the inmates were subjected to a pat-down search. (*Id.* ¶¶ 19, 22). The inmates, including Plaintiff, who was then a pretrial detainee at the Jail, stood facing the wall, spread-eagle and leaning forward, for the search. (*Id.* ¶¶ 22, 51). Defendant Betancourt conducted the pat-down search of Plaintiff. (*Id.* ¶¶

---

[3]    On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all facts alleged in Plaintiff's Amended Complaint (Doc. 5) as true. *See* Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted).

25–27). Before the search began, Defendant Barrett told another deputy to train Defendant Betancourt. (*Id.* ¶ 24).

During the search, Defendant Betancourt made full body contact with Plaintiff, placed his chin on Plaintiff, and "lean[ed] in so that Plaintiff c[ould] feel [Defendant Betancourt's] penis grinding against Plaintiff's buttocks." (*Id.* ¶¶ 25–27). Plaintiff told Defendant Betancourt to get off him. (*Id.* ¶ 28). Defendant Betancourt then leaned into Plaintiff's face and whispered in his ear, "what are you going to do about it?" (*Id.* ¶ 29). Plaintiff, "in shock, deeply offended, and deeply angered" told Defendant Betencourt that he would "beat [Defendant Betancourt's] ass" and used his body to push Defendant Betancourt off him. (*Id.* ¶¶ 30–31). Defendant Betancourt shoved Plaintiff by the waistline and "bow[ed] up" to Plaintiff. (*Id.* ¶¶ 32–33). Plaintiff then complained to Defendant Barrett about Defendant Betancourt's conduct, to which Defendant Betancourt responded by again making full body contact with Plaintiff. (*Id.* ¶¶ 34–35). Defendant Barrett came to pull Defendant Betancourt away, but Defendant Betancourt continued to step toward Plaintiff with a fisted hand. (*Id.* ¶ 37). Eventually, another officer took over for Defendant Betancourt and completed a pat-down search of Plaintiff. (*Id.* ¶ 38). Defendant Betancourt, however, continued to look at Plaintiff and step toward him. (*Id.* ¶ 39).

When Plaintiff reached the recreational yard, he spoke with Defendant Barrett. (*Id.* ¶¶ 40–44). Plaintiff informed Defendant Barrett of the incident and explained that he had told Defendant Betancourt to get off him. (*Id.* ¶¶ 42–43). Defendant Barrett told Plaintiff that Defendant Betancourt had been with the Sheriff's Office for two weeks and was still learning. (*Id.* ¶¶ 40, 44). Defendant Barrett told Plaintiff also that Plaintiff had full control of the situation and should have instructed Defendant Betancourt on how to conduct a pat-down search. (*Id.* ¶¶ 41, 44). Since the incident, Plaintiff has gone into deep anxiety and depression. (*Id.* ¶ 45). Plaintiff has undergone mental health counseling and treatment and anticipates additional treatment moving forward. (*Id.* ¶¶ 46–49).

Defendant Rachals adopted a frisk search policy on August 1, 2014. (*Id.* ¶ 54). The Policy, which is attached to the Complaint, was in effect during Plaintiff's pat-down search. (*Id.* ¶ 54; Doc. 5-2). The Policy was a part of the Jail's training program for deputies and

jailers. (Doc. 5 ¶ 57). Plaintiff claims that the Policy "failed in any way to specify where or how the deputy is to stand in relation to the inmate in conducting the frisk" and alleges that, by omitting where deputies or jailers should stand during pat-down searches, the Policy gave Defendants Rachals, Clark, and Barrett constructive knowledge it would cause inmates' rights violations, yet they maintained the Policy. (*Id.* ¶¶ 56–57). Contrary to Plaintiff's allegations, the Policy states that "[a] deputy shall take a position behind the inmate in order to control any sudden movement by the inmate" (Doc. 5-2 at 2). Plaintiff further alleges that Defendants Rachals, Clark, and Barrett failed to train deputies and jailers on how to conduct pat-down searches prior to allowing them to perform them, and instead expected inmates to provide this training. (*Id.* ¶ 59).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face if the complaint alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. The Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs[,]" but the same liberal reading does not apply to legal conclusions. *Anderson v. Wilco Life Ins. Co.*, 17 F.4th 1339, 1344–45 (11th Cir, 2021) (first quoting *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010); and then citing *Iqbal*, 556 U.S. at 678). "[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery[.]" *Iqbal*, 556 U.S. at 678–79. Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

A court ordinarily does not consider anything beyond the complaint and documents attached thereto when ruling on a motion to dismiss. There is an exception, however, for extraneous documents that are (1) referred to in the complaint, (2) central to the plaintiff's

4

claims, and (3) of undisputed authenticity. *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) (citations omitted). Plaintiff attached a copy of the Policy to his Amended Complaint, and there is no dispute as to its authenticity. (Doc. 5-2). The Court may consider the Policy—as it is central to Plaintiff's claims against Defendants Rachals, Clark, and Barrett—without converting the Motion to a motion for summary judgment. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); (*See* Doc. 5 ¶¶ 54–57).

## DISCUSSION

In their Motion, Defendants seek dismissal of Plaintiff's 42 U.S.C. § 1983 claims against the Individual Defendants in their official capacities as barred by the Eleventh Amendment. (Doc. 8-1 at 3–6). They further assert that the § 1983 claims against Defendants Rachals, Clark, and Barrett in their individual capacities are barred by qualified immunity. (*Id.* at 9–16). They likewise contend that the official-capacity state law claim against Defendant Betancourt under O.C.G.A. § 51-1-14 is barred by sovereign immunity. (*Id.* at 6–9) Lastly, they argue that Plaintiff fails to state a claim against Defendant ACCG-IRMA. (*Id.* at 16–19).

## I.    42 U.S.C. § 1983 Claim against Defendants Rachals, Clark, Barrett, and Betancourt in their Official Capacity

Plaintiff asserts claims for sexual assault to a pretrial detainee in violation of the Fourteenth Amendment and 42 U.S.C. § 1983 against Defendants Rachals, Clark, Barrett, and Betancourt in their official capacities. (Doc. 5 ¶¶ 7–8, 67). Defendants argue that these claims are barred by the Eleventh Amendment to the United States Constitution because, at all relevant times, Defendants were acting as an "arm of the state[.]" (Doc. 8-1 at 6). Plaintiff concedes that the official-capacity claims against Defendants Sheriff Rachals, Clark, and Barrett are barred under the Eleventh Amendment but does not address the official-capacity § 1983 claim against Defendant Betancourt in his Response.[4] (Doc. 9 ¶¶ 2–3). Accordingly, Plaintiff arguably has abandoned his official-capacity § 1983 claim

---

[4]    Plaintiff refers to "supervisory defendants" in his Response. (Doc. 9 ¶¶ 2–3, 9). While he does not define the term, in the Amended Complaint (Doc. 5), he identifies Defendants Rachals, Clark, and Barrett, as being responsible for training and supervision. (*Id.* ¶¶ 53, 57–59). Defendants likewise refer to them as the "Supervisory Defendants" in their Motion. (Doc. 8-1 at 9).

against Defendant Betancourt. *See Moore v. Camden Prop. Tr.*, No. 1:17-CV-01655-ELR, 2019 WL 11441431, at *3 (N.D. Ga. Mar. 26, 2019) (collecting cases for the proposition that "when an argument is raised that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned"), *aff'd*, 816 F. App'x 324 (11th Cir. 2020). As discussed below, even if not abandoned, the official capacity claim is barred by the Eleventh Amendment.

"[A] sheriff . . . functions as an arm of the state—and is thus entitled to Eleventh Amendment immunity—'when promulgating policies and procedures governing conditions of confinement at [a] County Jail.'" *See Kemeness v. Worth Cnty., Ga.*, 449 F. Supp. 3d 1318, 1323 (M.D. Ga. Mar. 18, 2020) (citation omitted). Here, Plaintiff's only allegations against Defendant Rachals pertain to the adequacy of the policies and training procedures he enacted at the Jail. (*See* Doc. 5 ¶¶ 54–59). Thus, Defendant Rachals is entitled to Eleventh Amendment immunity, and the official-capacity claim against him under 42 U.S.C. § 1983 must be dismissed.

The official-capacity § 1983 claims against Defendants Clark, Barrett, and Betancourt also fail. "[A] suit against [a Sheriff's Deputy] in his official capacity is merely a suit against the Sheriff of [the] County." *Jordan v. Blackwell*, No. 5:06-CV-214 HL, 2008 WL 4449576, at *6 (M.D. Ga. Sept. 29, 2008) (holding that official-capacity § 1983 claims against a sheriff's deputies are subject to dismissal). As the Sheriff, Defendant Rachals, is entitled to Eleventh Amendment immunity, the official-capacity claims against Defendants Clark, Barrett, and Betancourt also are subject to dismissal.

## II.     42 U.S.C. § 1983 Claim against Defendants Rachals, Clark, and Barrett in their Individual Capacity

Plaintiff asserts claims for sexual assault to a pretrial detainee in violation of the Fourteenth Amendment and 42 U.S.C. § 1983 against Defendants Rachals, Clark, and Barrett, and Betancourt in their individual capacities.[5] (Doc. 5 ¶ 67). Defendants Rachals, Clark, and Barrett argue that Plaintiff's 42 U.S.C. § 1983 claims against them in their

---

[5]     Defendants do not argue that the § 1983 claim against Defendant Betancourt in his individual capacity is barred by qualified immunity. (*See generally* Docs. 8, 8-1).

individual capacity are barred by qualified immunity. (Doc. 8-1 at 9). Plaintiff did not respond to this argument and has therefore abandoned these claims. (*See generally* Doc. 9); *Martinez v. United States*, No. 25-12980, 2026 WL 479811, at *1 (11th Cir. Feb. 20, 2026) ("[A] legal claim or argument that has not been briefed is deemed abandoned and . . . its merits will not be addressed."); *Avery v. City of Covington, Ga.*, No. 1:18-CV-5417-JPB-CCB, 2020 WL 10054679, at *13 (N.D. Ga. Jan. 22, 2020) ("Plaintiff does not respond in any meaningful way to [Defendant's] qualified-immunity argument, which he has therefore abandoned); *Fedderman v. Palm Beach Cnty. Sch. Bd.*, No. 22-81857-CIV, 2024 WL 654668, at *17 (S.D. Fla. Feb. 15, 2024) ("because Plaintiff fails to make even *passing* reference to qualified immunity . . . the Court finds that Plaintiff has waived any argument that [Defendant] is not entitled to qualified immunity").

### III.  O.C.G.A. § 51-1-14 Claim against Defendant Betancourt in his Official Capacity

Plaintiff asserts a claim for sexual assault in violation of O.C.G.A. § 51-1-14 against Defendant Betancourt in his official capacity. (Doc. 5 ¶ 64). Defendants argue in their Motion that this claim is barred by sovereign immunity because Plaintiff has not "identif[ied] a statute that waives the sovereign immunity afforded to Lee County (and Betancourt)." (Doc. 8-1 at 7).

Plaintiff's official-capacity claim against Defendant Betancourt under O.C.G.A. § 51-1-14 is barred by sovereign immunity. Under Georgia law, sovereign immunity protects all levels of government from suit unless expressly waived. *Johnson v. Randolph County*, 687 S.E.2d 223, 229 (Ga. Ct. App. 2009) (quoting *Cameron v. Lang*, 549 S.E.2d 341, 346 (Ga. 2001)). "Moreover, 'suits against county officials in their official capacities are in reality suits against the county.' Therefore, '[a] defendant sued in his official capacity is entitled to the benefit of the sovereign-immunity defense . . . to the extent the County has not waived it.'" *Temple v. McIntosh Cnty., Ga.*, No. 2:18-CV-91, 2019 WL 287482, at *6 (S.D. Ga. Jan. 22, 2019) (first quoting *Muckle v. Robinson*, No. 2:12-CV-0061-RWS, 2013 WL 251113, at *4 (N.D. Ga. Jan. 23, 2013); and then quoting *Carter v. Butts Cnty.*, 821 F.3d 1310, 1323 (11th Cir. 2016)). The Georgia Supreme Court has held that sovereign

immunity may only be waived by a "legislative act which specifically provides that sovereign immunity is waived and the extent of such waiver." *Woodard v. Laurens*, 456 S.E.2d 581, 582 (Ga. 1995); *Gilbert v. Richardson*, 452 S.E.2d 476, 480 (Ga. 1994) ("[W]e hold that sovereign immunity is waived by any legislative act which specifically provides that sovereign immunity is waived and the extent of such waiver."); *Olvera v. Univ. Sys. of Georgia's Bd. of Regents*, 782 S.E.2d 436, 437 (Ga. 2016); *see also* O.C.G.A. § 36-1-4 ("A county is not liable to suit for any cause of action unless made so by statute."). Moreover, the burden of proving waiver rests on the plaintiff. *Liberty Cnty. v. Eller*, 761 S.E.2d 164, 167 (Ga. Ct. App. 2014) ("A waiver of sovereign immunity must be established by the party seeking to benefit from that waiver." (quotations and citations omitted)); *see also Richardson v. Quitman Co.*, 912 F.Supp.2d 1354, 1368–69 (M.D. Ga. 2012) ("[S]overeign immunity bars state law tort claims . . . unless Plaintiffs prove that sovereign immunity has been waived."). Plaintiff cannot meet that burden here.

Plaintiff does not identify which, if any, statute he contends waived sovereign immunity. Courts routinely have held that sovereign immunity is not waived for assault, battery, or similar intentional torts. *See Weeks v. Colquitt Cnty.*, No. 7:23-CV-77 (LAG), 2025 WL 897531, at *11 (M.D. Ga. Mar. 24, 2025); *Hooks v. Rockdale Cnty.*, 907 S.E.2d 342, 345 (Ga. Ct. App. 2024); *Spell v. Cnty. of Jeff Davis, Ga.*, No. 2:24-CV-69, 2025 WL 696997, at *5 (S.D. Ga. Mar. 4, 2025). Moreover, "as to counties, waiver has been limited . . . to claims involving damages arising from the use of any motor vehicle for which 'counties [have used their] discretion to purchase liability insurance.'" *Spell*, 2025 WL 696997, at *5 (first quoting *Cameron*, 549 S.E.2d at 346; and then citing O.C.G.A. § 33-24-51(b)). Plaintiff's claim under O.C.G.A. § 51-1-14 arises not from vehicle use but from an alleged sexual assault that occurred during a pat-down search. (Doc. 5 ¶ 64). Accordingly, sovereign immunity bars Plaintiff's official-capacity claim against Defendant Betancourt under O.C.G.A. § 51-1-14.

IV. **Claims against Defendant ACCG-IRMA as Surety for the Individual Defendants**

Finally, Plaintiff appears to assert claims against Defendant ACCG-IRMA as the surety for Defendant Rachals pursuant to O.C.G.A. § 15-16-5 and as the surety for the remaining Individual Defendants under O.C.G.A. § 45-4-26. (Doc. 5 ¶¶ 13–15). Defendants contend that the Amended Complaint fails to allege that any Individual Defendant neglected to account for property in their custody, control, care, or possession in a manner that would render Defendant ACCG-IRMA liable under O.C.G.A. § 15-16-5 for the bond to Defendant Rachals. (Doc. 8-1 at 16–17; Doc. 10 at 5). They further argue that the Amended Complaint does not allege that Defendant ACCG-IRMA issued a bond to any of the Individual Defendants that would create liability under O.C.G.A. § 45-4-26. (Doc. 8-1 at 17–18; Doc. 10 at 5–6). Plaintiff offers only a cursory response to these arguments, relying on case law asserting that immunity does not extend to Defendant ACCG-IRMA in this context and invoking the language of O.C.G.A. § 45-4-26. (Doc. 9 ¶ 8).

Plaintiff asserts that Defendant ACCG-IRMA "is being sued in its capacity as surety for Sheriff of Lee County, Georgia, pursuant to Official Code of Georgia § 15-16-5, *et seq.*" (Doc. 5 ¶¶ 13–14). "The cited statutory provision states that '[t]he sheriffs shall give a bond in the sum of $25,000.00 . . . conditioned for the faithful accounting for all public and other funds or property coming into the sheriff's or their deputies' custody, control, care, or possession.'" *Wilson v. Stowe*, No. 1:15-CV-109 (LJA), 2017 WL 969971, at *6 (M.D. Ga. Mar. 13, 2017) (quoting O.C.G.A. § 15-16-5). "The allegations of Plaintiff's [Amended C]omplaint all relate to [a physical search] and have nothing to do with damages owed by the Sheriff's Department or property in control of the Sheriff's office." *Id.* Furthermore, while the Amended Complaint states that "Plaintiff invokes the applicability of O.C.G.A. § 45-4-26," it never alleges that Defendant ACCG-IRMA ever issued a bond to any of the other Individual Defendants. (*See* Doc. ¶ 15). The Court would therefore have to assume the existence of such a bond to consider the viability of Plaintiff's claim. *Cobb v. Fla.*, 293 F. App'x 708, 708 (11th Cir. 2008) ("The complaint's '[f]actual allegations

must be enough to raise a right to relief above the speculative level.'" (citations omitted)). For these reasons, to the extent that Plaintiff seeks to bring Claims against Defendant ACCG-IRMA, he fails to state a claim.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (Doc. 8) is **GRANTED**. Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (Doc. 4) is **DENIED as moot**. As Defendants have not sought to dismiss Plaintiff's claims against Defendant Betancourt, in his individual capacity, those claims remain pending.

**SO ORDERED**, this 30th day of March, 2026.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**